**Randolph Dale PEARCE, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 15969.**

United States Court of Appeals Ninth Circuit.

Dec. 19, 1958.

James F. Thacher, San Francisco, Cal., for appellant.

Robert H. Schnacke, U. S. Atty., Donald B. Constine, Richard H. Foster, Asst. U. S. Atty., San Francisco, Cal., for appellee.

Before STEPHENS, Chief Judge, and POPE and HAMLEY, Circuit Judges.

POPE, Circuit Judge.

Appellant was indicted in the District of Oregon for violation of the Dyer Act, Title 18 U.S.C. § 2314. He was accused of having caused a falsely made and forged check to be transported in interstate commerce. He was arrested in the Northern District of California and brought before the District Court for that district for a hearing under Criminal Rule 20, 18 U.S.C. The court appointed counsel to represent him; he waived right to trial in Oregon and elected to proceed under Rule 20 and to plead guilty to both counts of the indictment.

Appellant's counsel noticed a motion for an order allowing inspection of the presentence investigation report of the probation service. After the plea of guilty was entered, argument proceeded in support of this motion. During colloquy between the court and counsel for appellant the court remarked: "I don't know whether you have had a chance to talk to the Probation Officer as to the details of the report," and counsel replied: "I have, your Honor, and at length, but I still have a motion before the court asking that I be given—be allowed to inspect the probation report as a matter of law." The motion was denied. The denial of that motion is the basis for this appeal.

The point sought to be raised may be better understood after a reference to what transpired at the time of sentence. Upon inquiry as to whether counsel was ready "to proceed with judgment" in the case, counsel answered that he was and stated "I think that certainly the probation officer and the defendant have given me considerable knowledge * * * and all of us informally are able to get a grasp of this case." He then related the information he had from the defendant tending to show previous nervous and mental breakdowns, occasions when defendant was confined in mental institutions, and his discharge from military service, as "a schizophrenic, paranoid type, which manifested itself by compulsive acts of stealing." After further colloquy the following occurred: "The Court: Well, let me say this, Mr. Thacher. Now I think that this young man is in need of treatment more than punishment as such. But whatever his situation is, he can't be allowed to be at large in society. Now, he is young enough, he is 21, that I can declare him to be a youth offender and give him an indeterminate sentence and let the Attorney General use the best we have in our federal institutions for youthful people to try to get him psychiatrically oriented. Now I don't know that that can be done, but at

least we can try. And the sentence will be indeterminate, it won't be for a fixed period of time, and then if he has the capacity why, he can become adjusted. If he doesn't we are just going to have to keep him out of society as long as we can so he won't cause any more damage by this indiscriminate check writing.

"Mr. Thacher: I understand and appreciate that and have discussed it with the defendant. I think he understands it. The only question in my mind is, under the Youth Offenders' Act, whether you at this time, proceeding under, I think it is—

"The Court: 5010.

"Mr. Thacher: Yes, under 5010(b) wish to and feel that you have enough medical information before you to make the commitment, or whether the Court could avail itself of the provisions of 5010(e) and have the man thoroughly examined by an agency or—I have forgotten the other statutory word."

There then followed a lengthy discussion between court and counsel as to the appropriate order to be made under the Youth Corrections Act and thereupon the court stated: "Do you have anything further to say before judgment is pronounced?" To which counsel replied: "No, I would withdraw any suggestion I made and restrict my plea to the Court that he be sentenced in terms of 5010 (b) * * *." He expressed the hope that the Attorney General would see to it that the man received medical treatment. Thereupon the court announced that it would declare defendant to be an offender under the Youth Corrections Act and that defendant be treated under subdivision 5010(b), Title 18 U.S.C. Formal judgment was entered accordingly.

Appellant argues here that he had a constitutional right to the effective representation of counsel under the Sixth Amendment and that the denial of an opportunity to inspect the probation report furnished pursuant to Criminal Rule 32 (c) was in effect a denial of an opportunity to have adequate representation at the time of the imposition of the sentence. Appellant relies upon Smith v. United States, 5 Cir., 223 F.2d 750. He urges that he had as much right to look at this report as Jencks had to see the reports in issue in Jencks v. United States, 353 U.S. 657, 77 S.Ct. 1007, 1 L.Ed.2d 1103, and that the denial is presumptively prejudicial to him for the same reasons which were expressed in that case.

He also relies upon the cases holding that a prospective draftee for military service is entitled to know the contents of certain reports. See Gonzales v. United States, 348 U.S. 407, 75 S.Ct. 409, 99 L.Ed. 467, and Simmons v. United States, 348 U.S. 397, 75 S.Ct. 397, 99 L.Ed. 453.

Appellant seeks to distinguish Williams v. New York, 337 U.S. 241, 69 S.Ct. 1079, 93 L.Ed. 1337, on the ground that as a federal prisoner he is entitled to representation of counsel under the Sixth Amendment. He says that Amendment had no application to Williams who was defendant in a State prosecution. However, Williams was convicted of a capital offense, and under his rights to due process, he also was entitled to adequate representation of counsel.

We doubt if the Williams case is distinguishable. But, in any event, the record in this case does not require us to resolve the question whether under ordinary circumstances a person found guilty and about to be sentenced is entitled to call for an inspection of the probation report. Where the trial judge is relying upon that report in reaching a decision as to whether he should impose the minimum, the maximum or some other sentence, upon the prisoner, something may be said in support of the claim of counsel that he should have an opportunity to examine that report for the purpose of meeting possible adverse statements contained therein likely to affect the term of the sentence. But this is not that case.

Here counsel for the prisoner fully agreed with the court's suggestion that the appellant should be committed to the custody of the Attorney General under the provisions of § 5010(b) of the Youth

Corrections Act. It would appear to be plain that the contents of the probation officer's report could have no bearing upon the action of the trial judge. In short, counsel for appellant received exactly what he asked for, and we think that under these circumstances the appellant is not in a position to complain about the denial of his motion for an inspection.

The judgment is affirmed.